## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TAMMY MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-11-0341-HE |
| | ) | |
| HEALTHCARE SERVICE CORP., | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

In this removed case, plaintiff Tammy Morris challenges the denial by Defendant Healthcare Service Corporation d/b/a blue Cross & Blue Shield of Oklahoma ("BCBS") of her request for benefits to cover jaw replacement surgery. This appeal is governed by the standards of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). An administrative record containing the plan documents, Morris's request for benefits, BCBS's denial, and the subsequent internal appeals has been filed under seal. [Doc. #13] (cited herein as "AR"). Morris argues BCBS's denial of benefits was arbitrary and capricious and requests judgment in her favor. [Doc. #16]. BCBS has responded urging the court to defer to BCBS's decision and enter judgment in its favor. [Doc. #19]. The court concludes plaintiff has not made the necessary showing to warrant reversal of the plan administrator's decision.

### Background

Tammy Morris, an employee of an Oklahoma City business, is covered by a health care benefit program administered by BCBS ("the plan"). Generally speaking, the plan

provides benefits for necessary health care unless an exclusion applies. *See generally* [AR 25-54]. Morris has experienced medical trouble with her jaw for some time. She has seen James A. Baker, D.D.S. and Jacob W.B. Mendenhall, D.D.S. of Oral & Maxillofacial Surgeons of Oklahoma since the late 1980s or early 1990s. *See generally id.* at 202, 205 (letters recounting the doctors' relationship with Morris and explaining her condition to BCBS). In 1992, a bone graft was taken from her ribs to replace her mandibular condyles[1] due to "severe degenerative bone loss." *Id.* at 129, 131. By December of 2009, Dr. Mendenhall determined total replacement of Morris's jaw was necessary because the joint was degenerating and the 1992 graft was failing. *Id.* at 97.

On December 22, 2009, Dr. Mendenhall's office sent a predetermination claim on behalf of Morris to BCBS requesting benefits for the proposed jaw replacement. *Id.* at 96-105. The claim was accompanied by a letter of necessity from Dr. Mendenhall dated December 3, 2009, a CT report, and an x-ray. *See id.* The December 3rd letter stated in part:

> Tammy Morris has presented to our office for evaluation of her temporomandibular joint disorder. She presents with a CT scan which shows severe osteoarthritic changes and joint degeneration on the right side as well as a left costochondral graft which is failing. The patient presents with a chief complaint of severe temporomandibular joint pain bilaterally.

*Id.* at 97.[2] The claim form requested benefits for "arthroplasty, temporomandibular

---

[1]*The mandibular condyle is the rounded part of the mandible which relates to the jaw joint. See Stedman's Medical Dictionary 88270 (27th ed. 2000) (defining "condyle" as a "rounded articular surface at the extremity of a bone."); see also id. at 33600 (defining "articular" as "[r]elating to a joint.").*

[2]*The temporomandibular joint is the joint of the lower jaw. See Stedman's Medical Dictionary 402020.*

joint with prosthetic joint replacement"[3] on both the right and left sides of the jaw. *Id.* at 101-02; *see also id.* at 184 (summarizing the claim during Part II of the internal appeal).

Also on December 22, 2009, BCBS's Health Care Management Department sent a letter to Morris informing her the jaw replacement surgery was approved as medically necessary. *Id.* at 223. The letter went on to clarify that factors other than medical necessity, such as the application of an exclusion in the plan, could affect the payment of benefits. *Id.*

On December 30, 2009, BCBS sent a letter informing Dr. Baker that the plan did not cover "Arthroplasty TMJ." *Id.* at 114. Subsequently, on January 20, 2010, Dr. Mendenhall sent a "correction letter" to BCBS providing in part:

> Tammy Morris presented to our office for evaluation of her severe bilateral degenerative arthritis of the condyles. She presents with a CT scan which shows severe osteoarthritic changes and joint degeneration on the right side as well as the left costochondral graft which is failing. Patient presents with a chief complaint of bilateral jaw pain as well as headaches and shoulder pain.

*Id.* at 107. Comparing this to Dr. Mendenhall's December 3rd letter, the only significant changes are replacement of two specific references to the temporomandibular joint with different language. The same claim form, CT scan, and x-ray attached to the December submission were also provided to BCBS with this correction letter. *See id.* at 108-13. BCBS responded by letter on February 2, 2010 advising Dr. Mendenahll the plan did not provide

---

[3] "Arthroplasty is the "[c]reation of an artificial joint to correct advanced degenerative arthritis." Stedman's Medical Dictionary 33400.

benefits for "Arthroplasty TMJ." *Id.* at 115.

Dr. Mendenhall wrote another letter to BCBS on February 10, 2010. Here, the surgeon stated that Morris does not have a "temporomandibular joint case" but instead an "actual bony ankylosis"[4] of the 1992 bone graft. *Id.* at 119. He explained Morris's jaw is out of place and her joint is stiffening so she can only open her mouth 20mm, which had worsened from 25mm six weeks before. *Id.* Dr. Mendenhall further noted Morris's condition will progressively deteriorate until she can no longer open her mouth. *Id.* He urged BCBS to treat the condition as a complication of the previous graft and reminded defendant that a total jaw replacement is the only available treatment. *Id.*

BCBS treated Dr. Mendenhall's February 10th letter as a request for an appeal at the first level of a two-level internal appeals process. *See id.* at 0122-23. BCBS sent Morris a letter on March 15, 2010 explaining that she would not receive benefits for her proposed jaw surgery because of a jaw joint exclusion contained in her plan. *Id.* That exclusion provides:

> Except as otherwise specifically stated in this Certificate, we do not provide Benefits for services, supplies or charges . . . [f]or temporomandibular joint dysfunction, including but not limited to diagnostic procedures, splints, orthodontic/orthopedic appliances, restorations necessary to increase vertical dimension or to restore or maintain function or centric occlusion, alteration of teeth or jaws, Physical Therapy, and medication and behavioral modification related to conditions of temporomandibular joint syndrome or any other conditions involving the jaw joint, adjacent muscles or nerves, regardless of cause or diagnosis.

*Id.* at 50, 52.

---

[4] "Ankylosis" is the "[s]tiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint." Stedman's Medical Dictionary 23900.

4

Morris then filed a "Level II Appeal Request" on April 5, 2010, arguing the proposed jaw replacement fell within an exception to a separate exclusion for oral surgery contained in her plan. *Id.* at 125-26. That exclusion provides:

> Except as otherwise specifically stated in this Certificate, we do not provide Benefits for services, supplies or charges . . . [f]or Orthognathic Surgery, osteotomy, or any other form of oral Surgery, dentistry, or dental processes to the teeth and surrounding tissue (including complications resulting therefrom), except for . . . the improvement of the physiological functioning of a malformed body member.

*Id.* at 50-51. After a committee reviewed this second appeal, BCBS sent a final letter to Morris on May 3, 2010 stating that after considering both the jaw joint exclusion and the exception to the oral surgery exclusion, benefits were not available under the plan for plaintiff's proposed jaw surgery. *Id.* at 229-30. BCBS clarified that its decision was not a matter of medical necessity, but was instead based on the plan's exclusions. *Id.* at 229. This was BCBS's final decision on the matter. *See id.* at 66. Plaintiff initiated this action on March 7, 2011. [Doc. #1-2].

Morris advances three arguments in her brief for why BCBS's denial of benefits should be set aside. First, she argues the decision was arbitrary and capricious because it relied on the opinion of a doctor who specializes in an area of medicine other than maxillofacial surgery. Second, she contends her jaw surgery is "specifically covered" by the exception to the oral surgery exclusion and her surgeons "unequivocally state" she does not have TMJ disorder. Finally, she argues the jaw joint exclusion and the oral surgery exclusion create an ambiguity in the plan which should be resolved in her favor.

**Standard of Review**

The plan grants BCBS—as plan administrator—discretionary authority to interpret the plan's provisions and determine its benefits. [AR 56, 75]. Consequently, judicial review of BCBS's decision is limited to the arbitrary and capricious standard. Scruggs v. ExxonMobil Pension Plan, 585 F.3d 1356, 1360 (10th Cir. 2009). Under this deferential standard, the court asks only whether the plan administrator's decision "was reasonable and made in good faith." Weber v. GE Group Life Assur. Co., 541 F.3d 1002, 1010 (10th Cir. 2008) (citation omitted). And, the court may consider only those materials available to the plan administrator when it made its final decision. Holcomb v. Unum Life Ins. Co. of Am., 578 F.3d 1187, 1192 (10th Cir. 2009). BCBS made its benefit determination while under an inherent conflict of interest because it is both the plan administrator and the insurer. In this situation, the court "dials back" its deference and considers the conflict of interest as a factor in determining whether BCBS acted arbitrarily and capriciously. Weber, 541 F.3d at 1010 (citing Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 115-16 (2008)). The standard of review, however, remains deferential. Glenn, 554 U.S. at 115.

**Discussion**

The present dispute centers on the construction of the oral surgery and jaw joint exclusions contained in the plan. The first step in reviewing BCBS's decision is to scrutinize the plan documents and, if unambiguous, construe them as a matter of law. Weber, 541 F.3d at 1011 (citations omitted). When interpreting the plan documents, the court gives "the language its common and ordinary meaning as a reasonable person in the position of the plan participant, not the actual participant, would have understood the words to mean." Admin. Comm. of Wal-Mart Assoc. Health & Welfare Plan v. Willard, 393 F.3d 1119, 1123 (10th Cir. 2004) (quotation omitted). If on the other hand the plan is ambiguous, the court will affirm BCBS's interpretation of the plan so long as it is reasonable. *See* Weber, 541 F.3d at 1010. However, the court will take a "hard look" at BCBS's interpretation in light of its conflict of interest. *Id.* at 1011.

Here, the plan unambiguously denies coverage for plaintiff's proposed jaw surgery. Further, even if an ambiguity between the two exclusions exists, BCBS's construction of the plan was reasonable. Therefore, BCBS's denial of benefits was not arbitrary or capricious.

*1. The jaw joint exclusion is unambiguous*

The jaw joint exclusion precludes benefits for "treatment of temporomandibular joint dysfunction . . . or any other conditions involving the jaw joint, adjacent muscles or nerves, regardless of cause or diagnosis." [AR 53]. Morris is seeking benefits for surgery to replace her jaw joint with a prosthetic or artificial joint on each side. This is the surgery Dr. Mendenhall requested on the predetermination form, *id.* at 101, and plaintiff has never

contended otherwise. Instead, Morris argues the jaw joint exclusion does not apply because she does not have "TMJ disorder" and points to Dr. Mendenhall's February 10, 2009 letter stating she "does not have a temporomandibular joint case." Plaintiff focuses on whether her condition involves TMJ disorder, but ignores the plan language excluding coverage for "other conditions involving the jaw joint . . . regardless of cause or diagnosis." As the requested surgery is to replace the jaw joint, plaintiff's proposed surgery is excluded.

## 2. *The exclusions operate independently of one another*

Morris also argues her proposed jaw replacement is "specifically covered" by the plan because of an exception to the oral surgery exclusion. She maintains the exception "for the improvement of the physiological functioning of a malformed body member" from the oral surgery exclusion authorizes benefits for her surgery. Plaintiff contends that because the oral surgery exclusion does not apply, the jaw joint exclusion cannot apply either. The court concludes otherwise.

The exclusions section lists what is not covered by the plan. [AR 51]. An exception to an exclusion merely results in that exclusion not applying. An exception does not, in and of itself, constitute an independent authorization of benefits. Therefore, if one exclusion does not apply by virtue of an exception, there is no reason another exclusion could not operate to exclude benefits. Even if Morris is correct that her proposed jaw surgery is "for the improvement of the physiological functioning of a malformed body member"—and therefore not prohibited by the oral surgery exclusion—the jaw joint exclusion still precludes payment of benefits for her surgery.

### *3. BCBS's interpretation of the plan was reasonable*

Although unnecessary to the court's decision in light of the plain plan language, the court concludes the same result would have followed if the plan's provisions were viewed as ambiguous. Plaintiff contends the overlap between the jaw joint exclusion and the oral surgery exclusion create an ambiguity that should be construed against the insurer. She argues the exclusions are ambiguous because jaw replacement surgery relates to both the oral surgery exclusion and the jaw joint exclusion. An exception to one but not the other, according to plaintiff, is ambiguous. The parties' briefs also argue for different constructions of the term "malformed," which is contained in the language of the exception to the oral surgery exclusion. Malformed could either mean abnormal or irregular,[5] or it could refer to a congenital defect.[6]

BCBS has construed the plan to mean the jaw joint exclusion precludes benefits for any treatment relating to the jaw joint while the oral surgery exclusion, and its exceptions, apply to all other surgeries involving the oral cavity. Additionally, BCBS follows the medical definition of "malformed" and interprets it as meaning a defect present from birth. Thus, under BCBS's construction of the plan, a procedure to replace a cleft lip—a birth

---

[5] *See Webster's Third New International Dictionary of the English Language Unabridged 1367 (2002) (defining "malformed" as "having a formation or structure that is abnormal, anomalous, or otherwise irregular and defective.").*

[6] *See Stedman's Medical Dictionary 238540 (defining "malformation" as "[f]ailure of proper or normal development; more specifically, a primary structural defect that results from a localized error of morphogenesis; e.g., cleft lip."); see also id. at 260620 (defining "morphogenesis" as ""[d]ifferentiation of cells and tissues in the early embryo that establishes the form and structure of the various organs and parts of the body.").*

defect in the formation of the face[7]—is a covered benefit while jaw replacement is not.[8]

When an ERISA benefit plan vests discretionary authority to interpret the provisions of the plan with the plan administrator, the ordinary rules of insurance contract interpretation do not apply. *See* Kimber v. Thiokol Corp., 196 F.3d 1092, 1100 (10th Cir. 1999). Instead, the administrator's interpretation of the plan will be upheld so long as it is reasonable; it need not be the only, or even the best, interpretation possible. *Id.* at 1098. The court uses a "combination of factors analysis" when determining whether BCBS's construction of the plan was reasonable. Holcomb, 578 F.3d at 1193 (citing Glenn, 554 U.S. at 117). The existence and severity of a conflict of interest are but a factor in this analysis, and other case-specific factors should be considered. *See id.* In this case, the court also considers the correspondence from plaintiff's surgeons and the rationale supporting BCBS's interpretation.[9]

BCBS's interpretation of the plan gives effect to both explicit plan exclusions. It is based on the medical definitions of the terms used and there is nothing to suggest BCBS's

---

[7]*Stedman's Medical Dictionary 82180.*

[8]*Plaintiff's statement of facts claim her current condition is the result of a defect from birth. However, she cites to no evidence in the record to support this contention and she did not present this position to the plan administrator. Moreover, even if plaintiff's assertion is true, the* jaw joint *exclusion does not contain an exception to allow for reformation of a birth defect.*

[9]*Plaintiff's objection to the involvement of Dr. Cunningham, whose field is other than maxillofacial surgery, is unpersuasive, even if properly before the court. The determination at issue here is not the medical necessity for the proposed procedure but the nature and impact of the plan provisions. For the circumstances existing here, Dr. Cunningham's involvement does not suggest arbitrary or capricious handling of the claim.*

decision is inconsistent with any prior interpretation. Even taking into account BCBS's conflict of interest when evaluating the reasonableness of its determination, the court concludes its interpretation of the plan and consequent denial of benefits were not arbitrary or capricious.

The plan administrator's denial of benefits is **AFFIRMED** and plaintiff's claim is **DISMISSED** with prejudice. Consistent with Fed. R. Civ. P. 58(a), a separate judgment will be entered contemporaneously with this order.

**IT IS SO ORDERED**.

Dated this 10th day of January, 2012.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE